# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.S.-1 and K.S.**

**No. 19-0626** (Cabell County 17-JA-149 and 17-JA-150)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.S.-2, by counsel Steven M. Wright, appeals the Circuit Court of Cabell County's June 10, 2019, order terminating his parental rights to D.S.-1 and K.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Abraham Saad, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2017, the DHHR filed an abuse and neglect petition against petitioner and the mother alleging that they excessively used corporal punishment on their then four-year-old and ten-month-old children. The DHHR alleged that petitioner struck the four-year-old child, D.S.-1, with a belt buckle, injuring the child's head. It was reported that D.S.-1 had unhealed scratches on his face from previous strikes. The DHHR also alleged that the parents spanked and slapped the ten-month-old child, K.S. When the children were removed from the home, the police officer noted

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because a child and petitioner share the same initials, we will refer to them as D.S.-1 and D.S.-2, respectively, throughout this memorandum decision.

the smell of alcohol on petitioner's breath. The DHHR further alleged that a witness described petitioner as an "alcoholic." Thereafter, petitioner waived his preliminary hearing.

In August of 2017, the circuit court held an adjudicatory hearing, wherein petitioner admitted that he "committed domestic violence with the respondent mother in the home that negatively impacted his ability to parent his children." The circuit court further found that petitioner's alcohol abuse affected his ability to parent and adjudicated petitioner as an abusing parent based upon his acts of "domestic violence and excessive drinking in the home." Petitioner did not object to the circuit court's findings regarding his alcohol abuse. The circuit court then granted petitioner a post-adjudicatory improvement period and ordered the multidisciplinary team ("MDT") to meet and agree to the terms and conditions of the improvement period. The MDT met in September of 2017 and set forth the terms and conditions of the improvement period, which required petitioner's participation in parenting classes, family counseling, intensive outpatient alcohol abuse treatment, adult life skills classes, supervised visitations, and a parental fitness evaluation. The MDT recommended petitioner attend intensive outpatient alcohol abuse treatment based upon the circuit court's findings of alcohol abuse and petitioner's representations at the MDT meeting that he drinks at least three to four "tall boys" (24 ounce cans of beer) every day.

From November of 2017 until May of 2018, the circuit court held several status hearings. In January of 2018, the circuit court found petitioner to be substantially compliant with his improvement period. However, petitioner appeared incoherent at the March 12, 2018, status hearing. Later, petitioner admitted to having "a couple" of drinks prior to the March 20, 2018, MDT meeting, which was held at 1:00 p.m. In April of 2018, petitioner called the DHHR worker while intoxicated, and the DHHR worker received a report from petitioner's health care provider that he was noncompliant with his intensive outpatient alcohol abuse treatment. On May 6, 2018, the police were called to petitioner's rental property after he drunkenly "cut up all of the furniture and the walls" with a knife, accidentally injuring himself. Immediately thereafter, petitioner's supervised visitations were stopped. Also, in May of 2018, petitioner received a Soberlink device to monitor his alcohol consumption.[2] On July 2, 2018, the DHHR submitted a court summary recommending that the circuit court terminate petitioner's improvement period and set the matter for disposition. Petitioner completed his parental fitness evaluation in August of 2018, which diagnosed petitioner with severe alcohol use disorder.

The circuit court held dispositional hearings in February, March, and May of 2019. In February of 2019, petitioner testified that he had not seen the children since March of 2018, and blamed the mother for the children's removal. Petitioner admitted to having a "slight alcohol problem" but argued that he did not know that he was supposed to stop drinking alcohol. Nonetheless, petitioner testified that he "pretty much stopped" drinking alcohol when he "started blowing that [b]reathalyzer thing," referring to the Soberlink device. The DHHR worker testified that petitioner had a history of driving under the influence of alcohol, minimized his alcohol abuse, and refused to comply with alcohol counseling or treatment as he had missed alcohol screens and continued to test positive for alcohol with the Soberlink device. In March of 2019, the psychologist who performed petitioner's parental fitness evaluation testified that petitioner refused to admit to the severity of his alcohol addiction. Because petitioner failed to understand how his severe alcohol

---

[2]A Soberlink device monitors the user's alcohol use.

abuse impaired his ability to parent or how his ongoing alcohol abuse could degenerate his long-term cognitive functioning, the psychologist opined that the children would be in danger if placed with petitioner. She further opined that petitioner's prognosis for attaining the ability to parent was poor. In May of 2019, the DHHR worker testified that petitioner had not submitted an alcohol sample though the Soberlink Device since the last hearing in March of 2019. Finally, the circuit court concluded that petitioner had not been compliant with his case plan and failed to address his alcohol addiction. Accordingly, petitioner's parental rights were terminated by order entered on June 10, 2019. It is from this dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his improvement period and his parental rights because he substantially complied with the terms and conditions of his improvement period. Petitioner acknowledges that his initial participation was "not perfect" but asserts that he was "ultimately in compliance once he fully understood what was required." We disagree and find petitioner's argument without merit.

This Court has held,

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syllabus point 6, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

---

[3]The parental rights of the mother were also terminated below. According to the DHHR, the permanency plan for the children is adoption by their respective foster families.

Syl. Pt. 3, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As discussed above, petitioner was required to reach sobriety by completing intensive outpatient alcohol abuse treatment as a term of his improvement period. However, petitioner minimized his alcohol addiction throughout the proceedings and denied that his alcohol abuse affected his ability to parent, protect, and supervise the children. Despite sobriety being a term of petitioner's improvement period and ample evidence that petitioner's alcohol addiction worsened with time, he testified that he did not need treatment. Petitioner continued to drink alcohol throughout the proceedings and failed to acknowledge that his alcohol abuse was a problem, despite the circuit court's findings at adjudication and his own admissions to excessive alcohol use. We have held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child[ren]'s expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As petitioner made no progress towards sobriety and failed to acknowledge the severity of his longstanding alcohol addiction, the circuit court did not err in terminating his improvement period.

Petitioner also argues that the circuit court erred in terminating his parental rights because he corrected the conditions of abuse and neglect that gave rise to the petition—that he "wrongfully used corporal punishment." He contends that "the justification to permanently strip [him] of his parental rights was not related to the original [p]etition and was not proven by any evidence, much less clear and convincing [evidence]."

West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Further, pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[ren]."

At the outset, we note that this argument not only misstates the record but also ignores a main issue for which petitioner was adjudicated. Despite petitioner's contention that the abuse and neglect petition alleged only excessive corporal punishment, the record indicates that the DHHR cited petitioner's alcohol use when it removed the children from his care. Most importantly, petitioner ignores the fact that the circuit court found him to be an abusing parent based, in part, upon his "excessive drinking in the home" and he did not object to the circuit court's finding. Further, petitioner agreed to the terms of his improvement period, which included the completion of intensive outpatient alcohol treatment to gain sobriety after his admission of excessive alcohol use to the MDT members. Also, petitioner was provided a copy of his parental fitness evaluation which diagnosed him with severe alcohol use disorder and made recommendations for treatment.

4

Here, the record simply does not support petitioner's argument that his alcohol abuse was not a condition of abuse and neglect that he was expected to correct.

Below, the DHHR presented evidence that petitioner had a history of driving under the influence of alcohol, minimized his alcohol abuse, and refused to comply with alcohol counseling or treatment as he missed alcohol screens and continued to test positive for alcohol by the time of the final dispositional hearing in May of 2019. Further, the psychologist who performed petitioner's parental fitness evaluation found that petitioner minimized the severity of his addiction and failed to understand how his severe alcohol abuse negatively impacted his ability to parent the children. As evidenced above, the record supports a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future when he failed to follow through with his case plan, which required him to stop drinking alcohol and address his severe alcohol use disorder.

Moreover, the record shows that the children's welfare required termination of petitioner's parental rights because K.S. lacked a bond with him and D.S.-1 was terrified of him after sustaining emotional and physical abuse in his home. Further, petitioner could not adequately parent or supervise the children in light of his untreated alcohol addiction. For these reasons, we find no error in the circuit court's decision to terminate petitioner's parental rights as there was sufficient evidence presented to support a finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. This Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 10, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 28, 2020

5

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison